**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**GERALD D. STEVENS,**

    **Plaintiff,**

    v.                                 **Civil Action 2:17-cv-379
Judge James L. Graham
Magistrate Judge Jolson**

**COMMISSIONER OF SOCIAL
SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Gerald D. Stevens, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits.

**I.    PROCEDURAL BACKGROUND**

The affidavit of Sharon Weeks, an Operations Analyst in the Operations Support Branch of the Office of Disability Operations of the Social Security Administration, sets forth the relevant procedural history of this case as follows:

    a.    The claimant filed applications for Title II disability insurance benefits (DIB) and Title XVI social security income (SSI) on March 27, 2015, alleging disability beginning August 1, 2008.

    b.    On September 15, 2015, the Agency denied claimant's Title II application for DIB and determined that he was not eligible for disability benefits. The Agency affirmed its initial determination upon reconsideration on January 14, 2016.

    c.    On September 24, 2015, the Agency determined claimant was eligible for SSI benefits under Title XVI on initial determination, finding him disabled beginning on March 27, 2015.

d. On October 28, 2016, after a hearing, the ALJ found that with respect to the DIB claim, Plaintiff was not disabled pursuant to sections 216(i) and 223(d) of the Social Security Act, from August 1, 2008, through the date last insured of December 31, 2012. The ALJ also found Plaintiff was eligible for Medicare-qualified government employee (MQGE) benefits, via collateral estoppel, as of the favorable Title XVI decision finding him eligible for SSI benefits with the established onset date of March 27, 2015.

e. On December 7, 2016, the Agency issued a Notice of Award indicating that claimant was disabled as of August 1, 2008. The Notice of Award also stated that claimant is entitled to Medicare benefits starting on September 1, 2015, and as a government employee does not qualify for monthly Social Security benefits.

f. On March 3, 2017, the Appeals Council denied claimant's request for review of the ALJ's decision.

(Doc. 17-2, PAGEID #: 891). The Notice of Award (the "Notice") further advised Plaintiff that, if he disagreed with the decision, he could appeal within 60 days or later upon a showing of good cause. Plaintiff did not appeal.

Instead, Plaintiff filed the instant action nearly five months later on May 4, 2017, asserting two alleged errors. (Doc. 14). The first error consists of a single paragraph:

> The Notice of Award issued to Mr. Stevens on December 7, 2016 states he is disabled beginning August 1, 2008. It further states that as a government employee, he does not qualify for social security disability payments. Yet, Mr. Stevens' date last insured ("DLI") was determined to be December 31, 2012. These inconsistencies in the record require clarification, particularly if for some reason Mr. Stevens was found disabled despite the Decision.

(Doc. 14 at 2). The second assignment of error is likewise a single paragraph:

> The ALJ failed to take into consideration the medical evidence related to Mr. Steven's right arm limitations. The ALJ determined that Mr. Stevens "would be unlimited in his ability to reach overhead with the right upper extremity". (Decision at p. 10) However, this finding overlooks the medical evidence which substantiates that Mr. Stevens was diagnosed with right shoulder rotator cuff re-tear, a chronic condition, on December 13, 2010. This is a long-lasting condition, which presented limitations pre- and post-DLI and ultimately resulted in surgical intervention and ongoing treatment including injections. (3F/4; 5F) An additional limitation related to his right upper

extremity could very well interfere with, if not outright bar him, from performing the job functions of a buffing-machine tender, solderer, and storage-facility rental clerk. Further, instruction related to his right arm limitations could have changed the outcome in the Decision and resulted in Mr. Stevens being found eligible for full benefits.

(*Id*.). Defendant filed an Opposition to the Statement of Errors on November 27, 2017. (Doc. 17). Plaintiff did not file a reply.

## II. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Plaintiff's first assignment of error challenges the Notice. As Defendant explains, however, Plaintiff has not exhausted his administrative remedies with respect to that claim because he failed to appeal the Notice within 60 days. (Doc. 17 at 4). Plaintiff has the burden of demonstrating subject-matter jurisdiction, and he filed no reply concerning his failure to exhaust. *See Hines v. Astrue*, 876 F. Supp. 2d 1001, 1004, n. 2 (S.D. Ohio Feb. 21, 2012) (stating that "even if Plaintiff had properly filed her complaint in this Court, her Social Security claim would still be subject to dismissal because … she failed to present any evidence that she exhausted her administrative remedies). Based on the foregoing, even if the Notice was in error, this Court is without jurisdiction to evaluate Plaintiff's challenge to it based on his failure to pursue that claim with the agency. *Walker v. Astrue*, No. 10-13598, 2011 WL 5075704, at *1 (E.D. Mich. Sept. 15, 2011) (recommending dismissal of social security action for failure to exhaust administrative remedies because the court lacked subject matter jurisdiction), *adopted in* 2011 WL 5075832 (E.D. Mich. Oct. 26, 2011); *see also Skahan v. Comm'r of Soc. Sec.*, No. 15-00046, 2015 WL 9460120, at *3 (D. Hawai'i Dec. 24, 2015) ("Presenting an administrative claim to the agency is a non-waivable requirement to establishing jurisdiction under section 405(g)."); *Loughry v. Comm'r of Soc. Sec.*, No. SAG-14-2208, 2015 WL 11023436, at *2 (D. Md. Jan. 21, 2015) (finding it was precluded from exercising jurisdiction where the plaintiff failed to exhaust his

3

administrative remedies); *Brown v. Comm'r of Soc. Sec.*, No. 10-cv-784, 2012 WL 2829987, at *1 (E.D.N.Y. July 10, 2012) (dismissing social security claim where, *inter alia*, the plaintiff had 60 days to appeal the Notice of Award but failed to do so). Thus, the Court **RECOMMENDS** that Plaintiff's first assignment of error be **DISMISSED**.[1]

## III. THE ALJ'S DECISION

Plaintiff's second assignment of error is narrow. Specifically, Plaintiff claims the ALJ failed to consider his right shoulder rotator cuff re-tear, diagnosed on December 13, 2010, which required surgical intervention and ongoing treatment with injections. (Doc. 14 at 2 (citing 3F/4; 5F)). Because the Appeals Council denied claimant's request for review of the ALJ's decision on March 3, 2017, this claim is exhausted. (Tr. 1, PAGEID #: 43).

The Court's review of Plaintiff's second assignment of error "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

---

[1] Additionally, Defendant's opposition suggests that this issue is no longer ripe for resolution because an Amended Notice of Award has been issued consistent with the ALJ's decision. (Doc. 17 at 6). Having not filed a reply, Plaintiff did not dispute Defendant's representation.

In Plaintiff's limited argument, he cites to, but does not elaborate on, two pieces of evidence, namely 3F/4 and 5F. (Doc. 14 at 2). These are records from the Ohio Orthopaedic Center, where Dr. Hollingsworth treated Plaintiff for his *left shoulder* and left knee. For example, the records provide:

- an assessment of "*[l]eft shoulder* impingement, possible rotator cuff tear" and "[s]tatus post left knee ACL reconstruction, possible meniscal tear" and *left shoulder* injection on January 26, 2009 (Tr. 444–45, PAGEID #: 492–93);

- MRIs of the *left shoulder* and left knee on February 2, 2009 (Tr. 448–51, PAGEID #: 496–99);

- an examination following *left shoulder* and left knee MRIs, including an assessment of *left shoulder* strain on February 9, 2009 (Tr. 447, PAGEID #: 495);

- an injection in the left knee on March 16, 2009 (Tr. 452, PAGEID #: 500);

- an injection in the *left shoulder* on March 17, 2009 (Tr. 453, PAGEID #: 501);

- an injection in the *left shoulder* on August 3, 2009 (Tr. 455, PAGEID #: 503);

- an injection in the left knee on August 6, 2009 (Tr. 456, PAGEID #: 504);

- an assessment of *left shoulder* impingement, possible rotator cuff tear, and left knee injection on May 3, 2010 (Tr. 435, PAGEID #: 483);

- a *left shoulder* MRI on May 6, 2010 (Tr. 433, PAGEID #: 481);

- an evaluation of the *left shoulder* MRI and confirmation of plan to proceed with *left rotator cuff repair* on May 10, 2010 (Tr. 436, PAGEID #: 484);

- an assessment following *left rotator cuff repair* on June 3, 2010 (Tr. 437, PAGEID #: 485);

- an injection following examination of *left shoulder rotator cuff* repair and left knee strain on July 8, 2010 (Tr. 438, PAGEID #: 486); and

- a *left shoulder* injection following examination of *left shoulder rotator cuff* repair on November 18, 2010 (Tr. 439, PAGEID #: 487).

The records also reflect a *left shoulder* MRI on December 6, 2010 (Tr. 441, PAGEID #: 489), *left shoulder* injections on May 23, 2011 (Tr. 428, PAGEID #: 476), August 4, 2011 (Tr. 431, PAGEID #: 479), October 10, 2011 (Tr. 432, PAGEID #: 480), February 7, 2012 (Tr. 427, PAGEID #: 475), and April 15, 2013 (Tr. 425, PAGEID #: 473), and left knee injections on November 22, 2010 (Tr. 440, PAGEID #: 488), June 2, 2011 (Tr. 430, PAGEID #: 478), and April 22, 2013 (Tr. 426, PAGEID #: 474).

There are two sentences in these exhibits referencing Plaintiff's right shoulder. The first is in a record from Plaintiff's visit to Dr. Hollingsworth on December 13, 2010. (Tr. 393, PAGEID #: 441). Dr. Hollingsworth stated, "Mr. Stevens is here for a follow up of his *left shoulder*," and an "MRI reveal[ed] re-tear of his rotator cuff repair." (*Id*.). Dr. Hollingsworth conducted an examination of Plaintiff's *left shoulder* and indicated that Plaintiff opted to proceed with a revision rotator cuff tear (*id*.), a procedure which Plaintiff underwent on May 19, 2010. (Tr. 383, PAGEID #: 431). The sole mention of Plaintiff's right shoulder is under "assessment," which states "[r]ight shoulder rotator cuff re-tear." (Tr. 393, PAGEID #: 441).

The second reference to Plaintiff's right shoulder is similar. It is in a record from Plaintiff's visit to Dr. Hollingsworth on May 23, 2011. (Tr. 428, PAGEID #: 476). Dr. Hollingsworth again stated, "Mr. Stevens is here for a follow up of his *left shoulder*" but this time his assessment stated "*[l]eft shoulder* status post revision rotator cuff repair." (Id.). However, the examination refers to Plaintiff's right shoulder, stating "[r]ight shoulder exam: Range of motion is excellent. Pulses are 2+. Strength is 5/5." (*Id*.). Although Plaintiff's "function [was] excellent," he requested and received a cortisone injection for his *left shoulder*. (*Id*.; see also Tr. 429, PAGEID #: 477 (noting *left shoulder injection* on May 23, 2011)).

As an initial matter, it is unclear that Dr. Hollingsworth's mention of the right shoulder in

6

either of these documents was intentional, given that the remainder of those documents concern Plaintiff's ongoing treatment for *a left shoulder* injury. (*See* Tr. 393, PAGEID #: 441; Tr. 428, PAGEID #: 476). Nonetheless, a review of the record demonstrates the ALJ indeed considered Plaintiff's right shoulder injury at both the hearing and in his decision. During the hearing, Plaintiff testified that he has had two major surgeries on his right shoulder because of a torn rotator cuff and re-tear of his rotator cuff (Tr. 54, PAGEID #: 96), and that he was limited in the use of his arm (*see, e.g.*, Tr. 57, PAGEID #: 99). Plaintiff's sister, who accompanied him at the hearing, likewise testified about his two right shoulder surgeries (Tr. 63, PAGEID #: 105; Tr. 72, PAGEID #: 114).

In the October 28, 2016 decision, the ALJ noted that Plaintiff reported deficits and pain in his right shoulder, but found that "the record does not objectively document any right shoulder impairment or treatment until several years after the expiration of his 2012 date last insured (Exhibits 9F; 14F)." (Tr. 23, PAGEID #: 65; *see also* Tr. 25, PAGEID #: 67 (finding that Plaintiff's right rotator cuff tears "were not established by the medical evidence of record until after the expiration of the claimant's date last insured"). The ALJ elaborated:

> The record documents the claimant report right upper extremity pain in March 2015 (Exhibit 14 F). MRI testing of the right shoulder at that time showed no muscle atrophy, but evidenced some joint effusion, synovitis, and AC degenerative joint changes, as well as a full thickness tear. (Exhibit 14FR/57). Due to his symptoms, the claimant opted to undergo a right shoulder surgery. In April 2015, the record documents the claimant underwent a right shoulder arthroscopic rotator cuff repair with shoulder debridement (Exhibits 9F/1; 14F/63). Initially after the surgery, claimant exhibited no shoulder instability (Exhibit 14F/67). However, several months later in November 2015, the claimant reported pain in the right shoulder and experienced a recurrent right rotator tear (Exhibit 14F/96). As such, the claimant required a right shoulder revision surgical repair (Exhibit 14F/100). After the subsequent repair, the claimant was noted to wear a sling and reported experiencing no upper extremity numbness or tingling (Exhibit 14F/105). Thus, the undersigned has approximately considered the totality of the medical evidence of record, but finds the claimant's right shoulder condition did not emerge until several years after the claimant's 2012

> date last insured and is considered irrelevant to the time period under adjudication.

(Tr. 23–24, PAGEID #: 65–66). Thus, the ALJ considered Plaintiff's right shoulder rotator cuff re-tear and the resulting surgical intervention, but found that it occurred after the expiration of Plaintiff's date last insured. (*Id.*).

The ALJ's analysis of Plaintiff's right shoulder rotator cuff re-tear is not inadequate because it failed to discuss the mention of that condition in Dr. Hollingsworth's December 13, 2010 record. "There is no requirement . . . that [] the ALJ . . . discuss every piece of evidence in the administrative record." *Hamper v. Comm'r of Soc. Sec.*, 714 F. Supp. 2d 693, 703 (E.D. Mich. 2010) (citing *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x. 496, 508 (6th Cir. 2006)). In fact, while an ALJ is required to consider all of the relevant evidence in the record, there is no requirement that the ALJ expressly discuss each piece of that evidence. *Thurman v. Comm'r of Soc. Sec.*, No. 1:12-CV-2034, 2013 WL 2358579, at *7 (N.D. Ohio May 29, 2013) (quoting *Smith v. Comm'r of Soc. Sec.*, 2010 U.S. Dist. LEXIS 39785, 8–9, 2010 WL 1640271 (E.D. Va. Apr. 22, 2010); *see also Kornecky*, 167 F. App'x. at 508 ("An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.").

Further, although Plaintiff is correct that a right shoulder rotator cuff re-tear was noted in the December 13, 2010 record, he cites no evidence that would undermine the ALJ's determination that the surgical intervention and treatment for this condition occurred after the expiration of his date last insured. Stated simply, the mere reference to a right shoulder rotator cuff re-tear in isolation does not demonstrate that Plaintiff suffered a functional limitation during the relevant time period that lasted at least 12 months. *See Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988). Even if this evidence could be construed to support a conclusion

different from the ALJ's decision, Plaintiff fails to demonstrate that the ALJ's decision falls outside the "zone of choice." *See, e.g.*, *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (noting that "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference"). Taking into account all that the ALJ considered, substantial evidence supports his determination. Accordingly, the Court **RECOMMENDS** that Plaintiff's second assignment of error be **DENIED**.

## IV. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's first assignment of error be **DISMISSED** as unexhausted and Plaintiff's second assignment of error be **DENIED**.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision

of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

    IT IS SO ORDERED.


Date:   January 11, 2018                                       /s/ Kimberly A. Jolson
                                                                        KIMBERLY A. JOLSON
                                                                        UNITED STATES MAGISTRATE JUDGE